J-S20032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PRESTON DAQUEN BONNETT | : | |
| | : | |
| Appellant | : | No. 562 MDA 2024 |

Appeal from the PCRA Order Entered March 21, 2024
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0004301-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PRESTON DAQUEN BONNETT | : | |
| | : | |
| Appellant | : | No. 563 MDA 2024 |

Appeal from the PCRA Order Entered March 21, 2024
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0004302-2017

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: AUGUST 7, 2025**

Appellant, Preston Daquen Bonnett, appeals from the post-conviction court's March 21, 2024 order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant raises multiple claims on appeal, including ineffective assistance of counsel.  After careful review, we affirm.

This Court previously summarized the facts and procedural history of Appellant's two consolidated cases, as follows:

> This matter arises from two informations filed by the Luzerne County District Attorney against [Appellant] on January 3, 2018. [In the case docketed at CP-40-CR-0004301-2017, Appellant was charged] with one count of criminal homicide. [In the case docketed at CP-40-CR-0004302-2017, Appellant was charged] with two counts of criminal homicide and three counts of arson endangering persons. These charges resulted from the deaths of three children in an intentionally set fire[,] which occurred at their home on October 25, 2017.
>
> At approximately 7:08 p.m. on October 25, 2017, the Luzerne County Communications Center received a 911 call from [E.D.] regarding an individual on the back porch of the residence located at 60 Oakwood Drive, Laflin Borough, Luzerne County, Pennsylvania. [E.D.] was sixteen years old and resided at 60 Oakwood Drive with his mother, [S.M.], and younger brothers, [D.M.] and [E.M]. The individual on the back porch was [Appellant,] and he was not permitted at the residence. Four minutes later, the Luzerne County Communication Center received a 911 call from a neighbor reporting that the back of the property located at 60 Oakwood Drive was on fire. [E.D.], [D.M.,] and [E.M.] were home at the time of the fire and all three died as a result thereof.
>
> During the course of their investigation, the Pennsylvania State Police learned that [Appellant] had been in a relationship with [S.M]. They also learned that [Appellant] had equipment which allowed him to make fraudulent credit cards[,] and he conspired with [S.M.] to use the fraudulent cards. This activity eventually led to their arrest after a fraudulent card was used at a Turkey Hill.
>
> Following the incident at Turkey Hill, [Appellant] continued to contact [S.M.] and moved into the basement of her residence along with a woman named Tyla Griffin. After two days, [S.M.] told [Appellant] and [Ms.] Griffin to leave the house. Although [Appellant] and Ms. Griffin vacated the residence, they left the credit card making equipment inside[,] along with other items that [S.M.] retained. The credit card making equipment was turned over to police.

- 2 -

Even after leaving 60 Oakwood Drive, [Appellant] continued his attempts to contact [S.M]. Sometime in October [of] 2017, [S.M.] found three pictures taped to her home which depicted her performing a sex act on [Appellant]. All of the pictures contained a note advising [S.M.] to text a designated phone number or the individual who left the pictures would be back. [Ms.] Griffin identified the phone number and writing on the pictures to be [Appellant's].

Because [S.M.] and her children were afraid of [Appellant], she obtained cameras contained in Minion figurines from the movie Despicable Me. These cameras were placed at the front of her house as well as the rear near the back porch. The cameras had the capability to record[,] and [E.D.] was able to see in front and behind his house by using his cell phone which was connected to the cameras.

Prior to October 25, 2017, [Appellant] stated to [Ms.] Griffin that he would burn [S.M.'s] house down. He made similar comments on several occasions even after Ms. Griffin reminded him that the children would be in the house. [Appellant] went so far as to say [S.M.] can watch her kids burn.

On the evening of the fire, [E.D.] looked at his phone and saw [Appellant] on the back porch of his residence. [E.D.] called 911[,] and within four minutes[,] 60 Oakwood Drive was reported to be on fire. He died in the fire along with his two brothers. The cause of death for [E.D.] and [D.M.] was carbon monoxide poisoning due to smoke inhalation from a house fire. The cause of death for [E.M.] was a combination of smoke inhalation and burns due to the house fire. Homicide was the manner of death for all three boys.

Immediately after the fire, [Appellant] was taken into custody on an outstanding warrant for access device fraud[,] as well as to be interviewed in connection with the fire. During the interview[, Appellant] denied having a cell phone or a vehicle. He also denied being at [S.M.'s] home at 7:00 p.m. on October 25, 2017. The state police subsequently determined that [Appellant] had a cell phone and drove a grayish-green Ford Taurus. He also admitted that he had been at [S.M.'s] residence on October 25, 2017.

A search warrant was executed on a room in which [Appellant] and [Ms.] Griffin were living in the City of Wilkes-Barre on October 26, 2017. A pair of jeans and a sweatshirt were recovered[,] along with a cell phone.

Although the [M]inion containing the camera from the back porch was never recovered, the video was obtained. An individual wearing the same sweatshirt and jeans seized during the search of [Appellant's] room could be seen on the video. This video depicted [Appellant] on the back porch as described by [E.D.] in the 911 call.

[Appellant's] iPhone was examined by a member of the Pennsylvania State Police Computer Crime Unit. This examination revealed that the iPhone connected to a wireless router at 60 Oakwood Drive at 7:08 p.m. on October 25, 2017. Also located on the [Appellant's] iPhone was a photograph of the [M]inion camera which was taken at 7:26 p.m. on October 25. The photograph also depicted a pair of jeans with the same unique ridge pattern as seen in the video and on the jeans taken from [Appellant's] room in Wilkes-Barre. The user account for the Minion camera came back to [E.D].

The Commonwealth presented the testimony of a fire investigation expert employed by the Bureau of Alcohol, Tobacco and Firearms. A State Police Fire Marshal also testified as an expert. Both agreed that the fire was intentionally set and the area of origin was at the rear of the home near the back porch. Less than two weeks prior to the fire, [S.M.] discovered a hole in a back window near the area of origin and a beer bottle inside the residence on the floor. Accidental and natural causes of the fire were ruled out[,] as was a baseboard heater which [Appellant] alleged to have been the source of the fire.

An expert in electrical engineering and electrical causation of fires also testified as a witness for the Commonwealth. He inspected the baseboard heater and eliminated it as a potential cause of the fire. This expert also examined the home and determined that neither the electrical system, nor the electrical devices in the home, caused the fire.

Criminal complaints were filed against [Appellant] on October 30 and 31, 2017. [Appellant] maintained his innocence and proceeded to trial. Following a five[-]day trial which concluded on June 4, 2019, the jury found [Appellant] guilty of three counts of second[-]degree murder, three counts of third[-]degree murder[,] and three counts of arson endangering persons. On June 5, 2019, [Appellant] was sentenced to three consecutive mandatory terms of life imprisonment on the three counts of second[-]degree murder, ten to twenty years concurrent on the three counts of

third[-]degree murder[,] and the three counts of arson endangering persons merged with second[-]degree murder. On June 10, 2019, an order was issued which vacated the ten[-]to[-]twenty[-]year sentence imposed on the three counts of third[-]degree murder based upon merger and the law as set forth in **Commonwealth v. McCamey**, 154 A.3d 352, 358 (Pa. Super. 2017).

**Commonwealth v. Bonnett**, 239 A.3d 1096, 1099-1101 (Pa. Super. 2020) (citation omitted).

Appellant filed a timely appeal from his judgment of sentence. Pertinent to Appellant's claims herein, he raised a challenge to the sufficiency of the evidence, which this Court deemed waived based on his failure to specify, in his Pa.R.A.P. 1925(b) statement, which element(s) the Commonwealth's evidence failed to prove. **See id.** at 1106. We also concluded that the other issues raised by Appellant lacked merit and, thus, we affirmed his judgment of sentence on September 22, 2020. Our Supreme Court denied Appellant's subsequent petition for allowance of appeal on March 9, 2021. **See Commonwealth v. Bonnett**, 250 A.3d 468 (Pa. 2021).

On March 3, 2022, Appellant filed a *pro se* PCRA petition. Counsel was appointed and filed an amended petition on January 5, 2023. On February 7, 2024, the PCRA court conducted an evidentiary hearing. There,

three issues were pursued on [Appellant's] behalf. Two issues alleged ineffective assistance of counsel. One claim was based on the failure of counsel to impeach … Commonwealth witness, [Ms.] Griffin, with proof that she lied about offers of leniency. The second claim was due to counsel's failure to preserve the sufficiency of the evidence for appeal. The third claim alleged that the Commonwealth failed to correct the false testimony presented by [Ms.] Griffin.

PCRA Court Amended Opinion (PCAO), 12/30/24, at 1-2 (unnumbered). Notably, at the PCRA hearing, Appellant's counsel did not call any witnesses, but instead relied on eight defense exhibits that were admitted into evidence.

On March 21, 2024, the court issued an order, and accompanying memorandum, denying Appellant's PCRA petition. Appellant filed two *pro se* notices of appeal, one in each of his cases, on April 16, 2024. On April 29, 2024, the PCRA court sent this Court a letter indicating that Appellant had expressed his desire to proceed *pro se*, and that a hearing had been scheduled pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). On July 22, 2024, J.B. Fitzgerald, Esq., entered his appearance on behalf of Appellant, and subsequently filed a petition to remand for the filing of a Pa.R.A.P. 1925(b) statement *nunc pro tunc*. On November 12, 2024, this Court granted counsel's petition and remanded the case for the filing of a Rule 1925(b) statement and an opinion by the PCRA court. Appellant's Rule 1925(b) statement was thereafter filed with the PCRA court, and an opinion was filed by the PCRA court on December 30, 2024. **See** PCAO, **supra**.

On February 13, 2025, Appellant's instant counsel, Lonny Fish, Esq., entered his appearance on behalf of Appellant. That same day, Appellant's brief was filed raising the following twelve issues for our review:

> 1. Whether the [c]ourt erred in denying [Appellant's] PCRA claim of a violation of the due process clause of the U.S. and Pennsylvania Constitution[s] where the Commonwealth failed to correct the false testimony of one of its witnesses, [Ms.] Griffin, regarding promises for leniency?

2. Whether PCRA [c]ounsel was ineffective for failing to bring a claim in their petition that trial [c]ounsel and direct appeal [c]ounsel were ineffective by not making and/or preserving an objection to the due process violation under the U.S. and Pennsylvania Constitution[s] regarding the false testimony of [Ms.] Griffin and her promises of leniency?

3. Whether the [c]ourt erred in denying [Appellant's] PCRA claim of ineffective assistance of [c]ounsel under the U.S. and Pennsylvania Constitution[s] where trial [c]ounsel failed to impeach [Ms.] Griffin on cross-examination regarding promises for leniency?

4. Whether the [c]ourt erred in denying [Appellant's] PCRA claim of ineffective assistance of [c]ounsel under the U.S. and Pennsylvania Constitution[s] where direct appeal [c]ounsel failed to preserve and/or properly argue their sufficiency of the evidence claims?

5. Whether PCRA [c]ounsel was ineffective for failing to properly bring a claim in their petition that direct appeal [c]ounsel was ineffective by not preserving sufficiency of the evidence claims for [Appellant's] conviction of [m]urder of the [s]econd [d]egree under docket no. CP-40-CR-0004301-2017[,] where there was insufficient evidence to show [Appellant] caused the death of E.M., committed the underlying felony, or acted with malice?

6. Whether PCRA [c]ounsel was ineffective for failing to properly bring a claim in their petition that direct appeal [c]ounsel was ineffective by not preserving sufficiency of the evidence claims for [Appellant's] conviction of [m]urder of the [t]hird [d]egree under docket no. CP-40-CR-0004301-2017[,] where there was insufficient evidence to show either [Appellant] caused the death of E.M. or acted with malice?

7. Whether PCRA [c]ounsel was ineffective for failing to properly bring a claim in their petition that direct appeal [c]ounsel was ineffective by not preserving sufficiency of the evidence claims for [Appellant's] conviction of [m]urder of the [s]econd [d]egree under docket no. CP-40-CR-0004302-2017[,] where there was insufficient evidence to show either [Appellant] caused the death of E.D., committed the underlying felony, or acted with malice?

8. Whether PCRA [c]ounsel was ineffective for failing to properly bring a claim in their petition that direct appeal [c]ounsel was ineffective by not preserving sufficiency of the evidence claims for

[Appellant's] conviction of [m]urder of the [t]hird [d]egree under docket no. CP-40-CR-0004302-2017[,] where there was insufficient evidence to show either [Appellant] caused the death of E.D. or acted with malice?

9. Whether PCRA [c]ounsel was ineffective for failing to properly bring a claim in their petition that direct appeal [c]ounsel was ineffective by not preserving sufficiency of the evidence claims for [Appellant's] conviction of [m]urder of the [s]econd [d]egree under docket no. CP-40-CR-0004302-2017[,] where there was insufficient evidence to show either [Appellant] caused the death of D.M., committed the underlying felony, or acted with malice?

10.Whether PCRA [c]ounsel was ineffective for failing to properly bring a claim in their petition that direct appeal [c]ounsel was ineffective by not preserving sufficiency of the evidence claims for [Appellant's] conviction of [m]urder of the [t]hird [d]egree under docket no. CP-40-CR-0004302-2017[,] where there was insufficient evidence to show either [Appellant] caused the death of D.M. or acted with malice?

11.Whether PCRA [c]ounsel was ineffective for failing to properly bring a claim in their petition that direct appeal [c]ounsel was ineffective by not preserving sufficiency of the evidence claims for [Appellant's] multiple convictions of [a]rson under docket no. CP-40-CR-0004302-2017[,] where there was insufficient evidence to show [Appellant] intentionally started the fire?

12.Whether PCRA [c]ounsel was ineffective under ***Commonwealth v. … Bradley***, 261 A.3d 381 (Pa. 2021)[, [1]] for

---

[1] In ***Bradley***, our Supreme Court held "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." ***Bradley***, 261 A.3d at 401 (citation omitted). Here, Appellant retained new counsel, Attorney Fish, during the pendency of this appeal, and Attorney Fish now raises ineffectiveness claims against Appellant's initial PCRA attorney. The record before us is sufficient for us to dispose of Appellant's PCRA-counsel-ineffectiveness claims without remanding. ***See id.*** at 402 ("In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter.").

failing to call any of the certified witnesses from their filings at [Appellant's] evidentiary hearing[,] including [Appellant's] previous [c]ounsel?

Appellant's Brief at 9-12.

In the argument section of Appellant's brief, he does not set forth each above issue separately; instead, he categorizes his above 12 issues into four main arguments: (1) due process violations (Issues 1 & 2); (2) ineffective assistance of counsel (Issue 3); (3) sufficiency of the evidence (Issues 4-11); and (4) failure to call witnesses (Issue 12). **See id.** at 24, 34, 35, 40. We will likewise address Appellant's claims as four separate issues.

### Due Process Violations (Issues 1 & 2)

First, Appellant argues that his due process rights were violated when "the Commonwealth knowingly introduced false testimony by cooperating witness[, Ms.] Griffin…." Appellant's Brief at 24. As Appellant stresses, our Supreme Court has held that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." **Id.** at 24-25 (quoting **Commonwealth v. Hallowell**, 383 A.2d 909, 911 (Pa. 1978) (quoting **Napue v. Illinois**, 360 U.S. 264, 269 (1959)). Additionally, the **Hallowell** Court opined that "a conviction obtained through the knowing use of materially false testimony may not stand; a prosecuting attorney has an affirmative duty to correct the testimony of a witness which he knows to be false." **Hallowell**, 383 A.2d at 911 (quoting **Commonwealth v. Carpenter**, 372 A.2d 806, 810 (Pa. 1977)).

Here, Appellant claims that the Commonwealth knowingly permitted false testimony by Ms. Griffin when it failed to correct her statements during the following exchange on cross-examination:

[Defense Counsel:] As a result of you coming forward, though, on September 18th and speaking to police, you were -- your probation was reinstated and you were let out of jail; is that correct?

[Ms. Griffin:] Not right away, no.

[Defense Counsel:] But, yeah, when you went to court, they were agreeable to letting you out of jail and reinstating your probation; is that correct?

[Ms. Griffin:] Didn't really go that way.

[Defense Counsel:] They said that. They said -- the [p]rosecution said they would let you out of jail. … The [p]rosecution spoke on your behalf at your hearing and agreed to allow your probation to be reinstated so that you can get out of jail; is that correct?

[Ms. Griffin:] I'm not made aware of that. I can't answer that question.

[Defense Counsel:] You were present at your hearing?

[Ms. Griffin:] Yes.

[Defense Counsel:] You got out of jail after your hearing?

[Ms. Griffin:] No, I didn't. I was in jail for 90 days. I didn't go to court and get out of jail. So, I don't know what you're talking about.

N.T. Trial, 5/29/19, at 200-01.

Appellant avers that "Ms. Griffin's testimony that she was not aware of the prosecution speaking on her behalf at the hearing and/or agreeing to have her probation reinstated so that she could get out of jail was perjury." Appellant's Brief at 30. In support, Appellant points to a letter that the

- 10 -

Commonwealth sent to defense counsel prior to trial, informing the defense that

> Tyla Griffin … had her probation/intermediate punishment revoked in two separate cases on September 28, 2018[,] … and October 11, 2018.  As a result of her cooperation in [Appellant's case], the Commonwealth did not object to the reinstatement of her supervision in both cases.

*Id.* at 30-31 (citation to the record omitted).  Appellant argues that this letter proves that Ms. Griffin's testimony that "denied any knowledge of leniency in exchange for her cooperation" was perjury, and his due process rights were violated when the Commonwealth failed to correct Ms. Griffin's false statements.  *Id.* at 31.  Finally, Appellant insists that "there was a reasonable likelihood that the perjured testimony could have affected the judgment of the jury[,]" because Ms. Griffin's testimony "was essential to the Commonwealth's case[,] as she was the only one able to establish an intent by Appellant to cause the fire and put the children inside in harm's way."  *Id.*  Thus, he contends that he is entitled to PCRA relief on this claim.

However, Appellant's claim is waived.  Appellant made no objection to Ms. Griffin's testimony, or raise his due process argument during or after trial, or on direct appeal.  *See* 42 Pa.C.S. § 9543(a)(3) (stating that, to be eligible for PCRA relief, the petitioner must prove "[t]hat the allegation of error has not been previously litigated or waived"); 42 Pa.C.S. § 9544(b) (declaring that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding").  *See also* PCRA Court Memorandum (PCM),

- 11 -

3/21/24, at 10 (unnumbered) ("Because [Appellant] could have challenged the Commonwealth's presentation of Ms. Griffin's allegedly false testimony on direct appeal, and failed to do so, the claim is waived.") (citation omitted).[2]

**Ineffective Assistance of Counsel (Issue 3)**

Appellant next contends that his trial counsel was ineffective for failing to impeach Ms. Griffin "on whether the prosecution objected to her probation being reinstated and/or introduce the letter showing her deal with the government." Appellant's Brief at 34. Initially, we observe:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland** [**v. Washington**, 466 U.S. 668 … (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner

---

[2] Given that Appellant's claim is waived, we also reject his argument that his PCRA counsel was ineffective for not raising this issue as a due process violation under the Pennsylvania Constitution. **See** Appellant's Brief at 26 ("It could be argued that previous PCRA counsel failed to properly preserve a challenge to this issue under the broader protections of the Pennsylvania Constitution."). We will not deem counsel ineffective for failing to raise a waived or meritless claim. **See Commonwealth v. Spotz**, 896 A.2d 1191, 1222 (Pa. 2006) ("[C]ounsel will not be deemed ineffective for failing to raise a meritless claim….").

suffered actual prejudice as a result. **_Commonwealth v. Ali_**, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." **_Commonwealth v. Simpson_**, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **_See Ali_**, **_supra_**. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **_Colavita_**, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **_Commonwealth v. King_**, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **_Ali_**, … 10 A.3d at 291 (quoting **_Commonwealth v. Collins_**, … 957 A.2d 237, 244 ([Pa.] 2008) (citing **_Strickland_**, 466 U.S. at 694…)).

**_Commonwealth v. Spotz_**, 84 A.3d 294, 311-12 (Pa. 2014).

Instantly, Appellant contends that,

[f]irst and foremost, there is arguable merit that [Ms. Griffin] should have been impeached with the letter showing [she] did get leniency at [her] violation hearing. Second, there was no reasonable basis for counsel to not impeach [Ms. Griffin] with this letter or further cross-examine [her,] given the crucial role [her] credibility played in this case. Finally, the failure to impeach [Ms. Griffin] did prejudice Appellant as the jury was lead [*sic*] to believe, without contradiction, that he had made such inflammatory comments about wanting to set [S.M.'s] house on fire and [that he] had no regard for her children inside. With a proper impeachment of Ms. Griffin (and the conflicting scientific evidence that was already presented[, discussed *infra*]), there is a reasonable probability that Appellant would have been acquitted of the charges brought against him.

Appellant's Brief at 35.

- 13 -

In rejecting Appellant's ineffectiveness claim, the PCRA court reasoned as follows:

> In the amended petition filed on behalf of [Appellant], PCRA counsel alleged that trial counsel failed to impeach Ms. Griffin with proof that she lied about leniency. To decide this claim, it must first be determined if Ms. Griffin actually lied while testifying at trial. During cross-examination, trial counsel attempted to elicit testimony from Ms. Griffin to establish **that she was released from prison due to her cooperation in this case**. Ms. Griffin denied that [that] had occurred. Although [at Ms. Griffin's revocation hearing,] the Commonwealth did not object to the reinstatement of her parole, she was **not released from prison** because she was being held on two other revocations. The most Ms. Griffin received was an agreement from the Commonwealth that there would be no objection to the reinstatement of her parole. Ultimately, it was the decision of the judge at the revocation hearing as to whether Ms. Griffin's parole would be reinstated. Trial counsel could not be expected to obtain an admission from Ms. Griffin to receiving a benefit that she [did not] receive. There was no false testimony presented by Ms. Griffin regarding her cooperation which could [have been] used for purposes of impeachment.

PCM at 9-10 (unnumbered; emphasis added).

We discern no abuse of discretion in the PCRA court's determination that Appellant's ineffectiveness claim lacks arguable merit. Defense counsel's questioning focused on whether Ms. Griffin's probation had been reinstated, resulting in her **release from prison**, because of her cooperation in the instant case. Ms. Griffin responded that she had not been released from jail, which was accurate as, according to the Commonwealth, she "remained jailed for another 90 days" after the probation-revocation hearing. Commonwealth's Brief at 18. Although Ms. Griffin confusingly stated that she could not answer whether the Commonwealth had agreed to the reinstatement of her probation,

defense counsel's next question was whether she "got out of jail after [her] hearing[,]" to which Ms. Griffin truthfully answered, "No. I didn't." N.T. Trial at 201. Because Ms. Griffin's testimony was not clearly false at any point during the exchange cited by Appellant, defense counsel had no basis on which to impeach her, and Appellant's ineffectiveness claim lacks arguable merit.

Moreover, even if counsel could have impeached Ms. Griffin with the letter showing that the Commonwealth had agreed to not object to her being released on probation in her revocation cases, Appellant has not demonstrated that there is a reasonable probability the verdict would have been different had counsel done so. Initially, the letter revealed that the Commonwealth had not objected to Ms. Griffin's being released on probation **because she had spoken to police in September of 2018**; nothing in the record indicates that Ms. Griffin was offered leniency in exchange for **her testimony at Appellant's trial in 2019**. Thus, this leniency "deal" would not have cast doubt on the credibility of Ms. Griffin's trial testimony regarding the statements Appellant made to her that showed his motive in setting the fire.

Furthermore, shortly after Ms. Griffin provided the at-issue testimony on cross-examination, the Commonwealth asked her on re-direct if she had talked to police because she "wanted a deal" on her criminal cases, to which Ms. Griffin replied,

> [Ms. Griffin:] No. I wanted -- I felt for so long, like, I can't talk to anybody about this. I can't talk to my family. I definitely can't talk to normal people at work, friends, because I'm just automatically judged; and, it just -- like, I just wanted to get it off my chest.

- 15 -

N.T. Trial at 203. Therefore, the jury heard testimony that Ms. Griffin's statements to police were not motivated by any offer of leniency in her own cases, casting further doubt on Appellant's claim that the jury would have found her incredible had defense counsel confronted her with the letter.

Finally, even if the jury had been notified about the leniency Ms. Griffin received, and found her testimony incredible as a result thereof, we are not convinced that a different verdict would likely have resulted. There was strong physical evidence demonstrating that Appellant intentionally set fire to S.M.'s home. Namely, Appellant was captured on video at the back of S.M.'s home minutes before the fire started. After his arrest, Appellant admitted he was at S.M.'s home that night, and his cell phone had also connected to a wireless router at the home minutes before the fire was started. Fire investigators testified that the fire was intentionally set in the area of the back porch where Appellant had been seen on video, and any accidental or natural causes of the fire were ruled out. Thus, the jury did not need to believe Ms. Griffin's testimony that Appellant had a motive for starting the fire in order to convict him of the offenses which it did. In other words, even if the jury had found Ms. Griffin's testimony incredible, it would have likely reached the same verdict convicting Appellant.

In sum, Appellant has not demonstrated that Ms. Griffin's trial testimony was perjury. Thus, his claim that his defense counsel was ineffective for failing to impeach Ms. Griffin with the Commonwealth's letter lacks arguable merit. Appellant has also failed to demonstrate that the jury would have disbelieved

Ms. Griffin's testimony had defense counsel confronted her with the letter, or that it would not have convicted Appellant even had it found her testimony incredible. Accordingly, no relief is due on Appellant's ineffectiveness claim regarding Ms. Griffin's testimony.

**Sufficiency of the Evidence Claims (Issues 4 through 11)**

In his next argument, Appellant contends that his direct appeal counsel was ineffective for failing to properly preserve challenges to the sufficiency of the evidence to sustain Appellant's convictions, resulting in this Court's deeming those issues waived on appeal. *See Bonnett*, 239 A.3d at 1106 (deeming waived Appellant's challenges to the sufficiency of the evidence because his "blanket statement" declaring the evidence "insufficient to convict him of all charges" in his Rule 1925(b) statement did not adequately "specify the element or elements upon which the evidence was allegedly insufficient to support Appellant's convictions"). Because "counsel will not be deemed ineffective for failing to raise a meritless claim," *Spotz*, 896 A.2d at 1222, Appellant must demonstrate that his underlying sufficiency claims have arguable merit in order to prove that his direct appeal counsel was ineffective for failing to preserve them. Thus, we begin by recognizing that,

> [w]hether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is *de novo*, and our scope of review is plenary. In conducting our inquiry, we examine[,]
>
> > whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable

- 17 -

doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 436 (Pa. Super. 2021) (cleaned up).

Here, Appellant avers that the evidence was insufficient to sustain his convictions for second-degree murder, third-degree murder, and arson. This Court has explained:

A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony. Perpetration of a felony is defined as: The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary, or kidnapping. The malice or intent to commit the underlying crime is imputed to the killing to make it second-degree murder, regardless of whether the defendant actually intended to physically harm the victim.

*Commonwealth v. Dixon*, 276 A.3d 794, 800 (Pa. Super. 2022) (cleaned up).

Here, the felony underlying Appellant's second-degree murder convictions is arson, which is defined, in pertinent part, as follows:

A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays

or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if: (i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire….

18 Pa.C.S. § 3301(a)(1)(i).

Appellant also challenges the sufficiency of the evidence to sustain his conviction for third-degree murder.

Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice.

\*\*\*

Malice exists where there is a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Where malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury. A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result.

***Commonwealth v. Kling***, 731 A.2d 145, 147–48 (Pa. Super. 1999) (cleaned up).

Here, Appellant contends that the evidence was insufficient to support his convictions because the Commonwealth failed to prove that he intentionally started the fire that caused the children's deaths, or that he acted with malice. First, in contending that the Commonwealth did not prove that he intentionally started the fire, Appellant insists that "the scientific evidence

- 19 -

refuted that notion and tended to show the fire, at best, had an undetermined cause." Appellant's Brief at 37. In support, Appellant points to the expert testimony of two defense witnesses: Michael F. Daily, a fire and explosive investigator, and Frank Frese, an expert in forensic and electrical engineering. *See id.* at 37-38. Essentially, Appellant argues that these expert witnesses concluded that the fire's origin was undetermined, and that there were other, accidental ways the fire could have started, such as from cigarette butts or an electrical heater. According to Appellant, these experts refuted the Commonwealth's expert witnesses, and proved that the fire was not intentionally set.

In response, the Commonwealth maintains that Appellant "fails to view the record in a light most favorable to the Commonwealth." Commonwealth's Brief at 23 (citing *Commonwealth v. McClendon*, 874 A.2d 1223, 1228 (Pa. Super. 2005) ("The standard we apply when reviewing the sufficiency of the evidence is whether *viewing all the evidence admitted at trial in the light most favorable to the verdict winner*, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.") (emphasis added)). We agree. At trial, the Commonwealth presented the testimony of Special Agent Robert Seth Graybill, with the Bureau of Alcohol, Tobacco and Firearms, who was admitted as an expert in fire investigation and determination of cause and/or origin. N.T. Trial at 462. After lengthy testimony regarding his investigation and testing of the fire in this case, Special Agent Graybill opined that it had been set intentionally,

specifically by an individual reaching through a window and lighting curtains on fire. *Id.* at 501-02; 528. He further opined that the heater in the home was tested and ruled out as a possible cause of the fire. *Id.* at 527.

Additionally, Pennsylvania State Police Fire Marshal Karri Dodson testified as an expert in the field of fire investigation. *Id.* at 532. She also discussed her investigation in detail, and then opined that the fire was intentionally set with an open flame, likely held against the window curtains. *Id.* at 562-63. Fire Marshal Dodson further opined that the fire was not caused by a cigarette accidentally left burning by S.M., as Appellant attempted to argue. *Id.* at 565. Fire Marshal Dodson explained that that scenario was belied by the timeline of when S.M. left the house, and when smoke from the fire was first reported. *Id.*

Properly viewing this record in the light most favorable to the Commonwealth, the expert testimony presented by Special Agent Graybill and Fire Marshal Dodson was sufficient for the jury to conclude that the fire was intentionally set, despite that Appellant presented experts with contrary positions. Again, the jury was free to believe the Commonwealth's experts and disbelieve Appellant's. *See Rojas-Rolon*, 256 A.3d at 436. Moreover, the video and other evidence placing Appellant at the home around the time that the fire was set was sufficient for the jury to conclude that he was the individual who intentionally set the fire.

Second, Appellant argues that the Commonwealth failed to prove that he acted with malice. However, Appellant's entire argument to support this

claim is that "here, there is simply not enough evidence to show that Appellant even started the fire in question. All we have is mere speculation and conflicting scientific reports." Appellant's Brief at 40. This undeveloped argument is unconvincing, given the above-discussed evidence that demonstrated Appellant intentionally set fire to S.M.'s home in which he knew the children were living. This evidence was sufficient to establish, at the very least, that Appellant consciously disregarded an extremely high risk that his actions of setting fire to the home could cause death or serious bodily injury. Therefore, the Commonwealth's evidence proved that Appellant acted with malice.

Because Appellant has not demonstrated that there is any arguable merit to his sufficiency-of-the-evidence claims, his appellate counsel cannot be deemed ineffective for failing to preserve those issues on direct appeal.[3]

**Failure to Call Witnesses (Issue 12)**

Finally, Appellant contends that his PCRA counsel was ineffective for not calling any witnesses at the evidentiary hearing conducted in this case. Specifically, Appellant claims that PCRA counsel should have called his trial

_____

[3] Likewise, we also reject Appellant's argument that his initial PCRA counsel was ineffective "by failing themselves to properly preserve these [sufficiency] arguments in [Appellant's] petition. No where [*sic*] in the[] amended PCRA [petition] or accompanying brief did PCRA counsel indicate what elements he was challenging for sufficiency purposes." Appellant's Brief at 36. Because Appellant's underlying sufficiency claims lack arguable merit for the reasons stated *supra*, PCRA counsel cannot be deemed ineffective for allegedly failing to properly raise them in Appellant's amended petition. **See Spotz**, 896 A.2d at 1222.

- 22 -

counsel to the stand. He insists that, had PCRA counsel done so, trial counsel could have been asked whether he had any reasonable basis for not impeaching Ms. Griffin with the Commonwealth's letter showing that she had a leniency deal with the Commonwealth.

Appellant cannot demonstrate that he was prejudiced by PCRA counsel's failure to call his trial counsel to the stand at the evidentiary hearing. For the reasons set forth *supra*, we have concluded that Appellant failed to meet the arguable-merit or prejudice prongs of the test for proving trial counsel's ineffectiveness regarding his questioning of Ms. Griffin. Because Appellant has not met those two prongs of the ineffectiveness test, he could not establish that the outcome of the PCRA proceeding would have been different, had his PCRA counsel presented trial counsel's testimony regarding the reasonable-basis prong. **See Commonwealth v. Rush**, 838 A.2d 651, 656 (Pa. Super. 2003) ("If the petitioner does not satisfy any of the three prongs as to trial counsel's ineffectiveness, he will have failed to establish an ineffectiveness claim…."). Accordingly, no relief is due.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/7/2025